# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| § | Criminal Action No. |
| v. § | |
| § | No. 3:09-CR-108-K |
| ROBERT RICHARDSON § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Robert Richardson's Amended Motion to Suppress and Request for Evidentiary Hearing. (Doc. No. 65). The Court has considered the motion, the response, and the applicable law. Mr. Richardson has failed to present new evidence or legal arguments justifying reconsideration of his original motion to suppress. Further, ruling upon Mr. Richardson's statements to officers before he was *Mirandized* is unnecessary for reasons stated herein. Therefore, the motion is **DENIED**.

## I. Background

This case arises from a traffic stop in southeast Dallas, Texas. At approximately 8 p.m. on December 28, 2008, while on patrol, Dallas Police Officers Brandon Byrd and Joshua Forner passed a car driven by Mr. Richardson on Southland Street. Officer Byrd observed that Mr. Richardson's car did not have its rear license plate illuminated as required by Texas law, and turned his squad car around to follow Mr. Richardson. Officer Byrd states that Mr. Richardson drove away at a higher rate of speed than the

flow of traffic when Officer Byrd did this. Officer Byrd eventually caught up to Mr. Richardson on a side street. The officers saw Mr. Richardson illegally park his car against the flow of traffic and witnessed the two occupants of the car exit the vehicle as the officers pulled up and turned on their overhead lights. The officers told both men to stop, which the passenger did. Officer Byrd was forced to run down and restrain Mr. Richardson after Mr. Richardson was attempting to cross a vacant lot. Marijuana was found on Mr. Richardson during a pat-down search. Both men were handcuffed and placed in squad cars that had responded to the scene.

After walking around the car, the officers state they saw a firearm sticking out from under the driver's seat. Mr. Richardson disputes that the officers were able to see the firearm from outside the car. The officers attempted to enter the vehicle, but the car had been locked. When asked for the keys to his car, Mr. Richardson did not respond. The officers searched around the car with their flashlights, but did not find the car keys.

Prior to the stop, the officers learned of a shooting reported not far from where they stopped Mr. Richardson. While it was later determined that the shooting was unrelated to Mr. Richardson and his passenger, it was unclear at the time whether or not the officers had detained potential suspects in the shooting. While trying to determine this, Officer Byrd attempted to reach several of his superiors for instructions on entering the locked vehicle to obtain the firearm. Officer Byrd eventually reached a sergeant who authorized the officers to enter Mr. Richardson's car.

After receiving approval, the officers broke through one of the windows in Mr. Richardson's car and retrieved a firearm from underneath the driver's seat. No other contraband was found in the car. Mr. Richardson, who had previously been convicted of aggravated assault, was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c).

An assistant public defender was appointed to represent Mr. Richardson after he was arraigned. His assistant public defender filed a motion to suppress in February 2010, and a hearing was held on March 22, 2010, at which Mr. Richardson's lawyer presented evidence attempting to show the stop and search of Mr. Richardson's car was illegal. This Court denied Mr. Richardson's motion on April 13, 2010. Dissatisfied with his attorney, Mr. Richardson moved this Court to substitute counsel on April 22, 2010. The Court granted Mr. Richardson's motion and substituted Mr. Michael Levine for the assistant public defender on April 30, 2010. Mr. Levine asked this Court to reconsider the original motion to suppress and for leave to file an amended motion, which is the subject of this opinion.

## II. Legal Standard

A district court is invested with broad power to revisit pretrial issues upon which it has already ruled. *United States v. Palmer*, 122 F.3d 215, 221 (5th Cir. 1997); *United States v. Acosta*, 669 F.2d 292, 293 (5th Cir. Unit B 1982). The district court's decision whether or not to review a prior ruling on a motion to suppress is reviewed by the circuit

for an abuse of discretion. *United States v. Doggins*, No. 09-40925, 2011 WL 438935, *2 (5th Cir. Feb. 9, 2011).

III.   Analysis

   A.   **Basis for Mr. Richardson's amended motion: "new" evidence**

Mr. Richardson argues that new evidence requires a review of this Court's order denying Mr. Richardson's first motion to suppress evidence. In support, Mr. Richardson identifies one item: a portion of the in-dash video from Officer Byrd's squad car that contains a conversation between Officer Byrd and Mr. Richardson regarding the presence of a weapon in Mr. Richardson's vehicle, which was not previously viewed by the Court. Mr. Richardson asserts the video segment proves Officer Byrd was not aware there was a firearm underneath the driver's seat before breaking Mr. Richardson's window and entering the vehicle, that this video segment casts doubt on the credibility of Officer Byrd, and necessitates a second look at Mr. Richardson's arguments.

Mr. Richardson's description of the previously un-viewed video segment of another conversation between Mr. Richardson and Officer Byrd does not sway this Court's earlier determination of whether or not the officers had seen a firearm in Mr. Richardson's car prior to entering it. While Mr. Richardson argues that allusions to the possible presence of a firearm reveals the officers did not see the firearm until they entered the vehicle, there is credible evidence that suggests otherwise. Officer Byrd testified he had contacted several superior officers for direction on how to enter Mr.

Richardson's vehicle to retrieve a firearm when the vehicle was locked and the keys were missing. Transcript of suppression hearing, Doc. No. 60 at 36. Credibility evidence that the officers were not aware of the firearm prior to the search, *id*. at 57–58 (discussing the delay between entering the car and retrieving the firearm), and a report by James Appleton on the probability of seeing an unlit license plate light, *id*. at 62–63, were considered during the hearing. The additional credibility evidence Mr. Richardson advances, the allegedly unwarranted arrest of the passenger in Mr. Richardson's car and evidence Officer Forner had improperly claimed he was the victim of a hit-and-run accident, does not change this Court's determination.

Because Mr. Richardson's "new" evidence does not change this Court's decision and he advances no additional legal grounds in his motion, the motion and request for a second hearing are denied.

**B.   Grounds upon which Mr. Richardson's first motion to suppress was denied**

For the sake of clarity, the Court will specifically enumerate the reasons it denied Mr. Richardson's first motion to suppress evidence. There are three arguments that were raised during the original motion and the subsequent amended motion: (1) the initial stop and seizure of Mr. Richardson was illegal; (2) the search of Mr. Richardson's car was illegal; and (3) Mr. Richardson's statements to the officers before he was *Mirandized* were illegally obtained.

1.  **Initial stop and seizure of Mr. Richardson**

The Fourth Amendment protects against unreasonable searches and seizures. *United States v. Richard*, 994 F.2d 244, 247 (5th Cir. 1993). A traffic stop is a seizure within the meaning of the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 255 (2007) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has been committed. *Whren v. United States*, 517 U.S. 806, 810 (1996).

First, Mr. Richardson admits there was probable cause to stop his car. Mot. at ¶ 10 (acknowledging violation of Tex. Transp. Code Ann. § 545.303(a) for illegally parking with the driver's side tires on the curb). There was also probable cause to arrest Mr. Richardson once he pulled over and exited his vehicle. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (arrest allowed when probable cause exists to believe an individual has committed even the most minor criminal offense in an officer's presence). There are no Fourth Amendment issues with Mr. Richardson's initial stop because both the seizure of his car and his arrest were supported by probable cause.

2.  **The search of Mr. Richardson's car**

As for the search of Mr. Richardson's car, the government argues that the officers saw the firearm seized from Mr. Richardson's car when the officers looked through the car's windows. Evidence discovered in plain view from a location where officers are

legally present is an exception to the warrant requirement of the Fourth Amendment. *United States v. Kaiser*, 545 F.2d 467, 477 (5th Cir. 1977); *see also United States v. Stevenson*, 97 F. App'x 468, 470 (5th Cir. 2004) (contraband and evidence seen through a car's window was in "plain view"). This Court determined, after hearing evidence and argument at the suppression hearing, that the officers had indeed seen the firearm in Mr. Richardson's car prior to entering the vehicle. This meant the firearm was in plain view of the officers through the windows of Mr. Richardson's car, and the subsequent search of the car and seizure of the firearm were not violations of the Fourth Amendment.

Alternatively, the government argues the firearm was discovered pursuant to an inventory search of Mr. Richardson's car at the scene and, even if the firearm was not in plain view of the officers, it would have been inevitably discovered during an inventory search. Inventory searches of automobiles are well-established exceptions to the warrant requirement of the Fourth Amendment. *United States v. Andrews*, 22 F.3d 1328, 1333–34 (5th Cir. 1994). As opposed to evidentiary searches, inventory searches: (1) protect the owner's property while in police custody; (2) protect the police against claims of stolen property; and (3) protect the police and the public from potential danger. *Id*. at 1334. Inventory searches must be conducted according to standard regulations and procedures. *Florida v. Wells*, 495 U.S. 1, 4–5 (1990). The "inevitable discovery" rule allows evidence which otherwise would be suppressed due to constitutional violations to be admitted if: (1) there was a reasonable probability that

the evidence would have been uncovered by lawful means and (2) the government was actively pursuing an alternate route to the evidence at the time of the violation. *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir. 1991).

At the suppression hearing, the Court heard evidence that: (1) Mr. Richardson's car was illegally parked against the flow of traffic, Transcript of suppression hearing, Doc. No. 60 at 28; (2) there was no one to whom the car could be released, and, even if there was, Mr. Richardson had not surrendered or identified where the keys to the car were located, *id*. at 52–53, 60, 64; and (3) though there was no evidence presented by the attorneys, Mr. Richardson's statements to the Court indicated his car was eventually towed, *id*. at 73. The government also put on evidence of a Dallas Police Department policy on inventory searches, requiring officers to secure "money $5 or over, firearms, and valuables" at the scene before a vehicle is towed. *Id*. at 38. Given these facts, an inventory search was warranted to secure Mr. Richardson's valuables prior to the vehicle being towed and impounded. That means, even if the officers had not seen the firearm prior to entering Mr. Richardson's car, the firearm would have been discovered during an inventory search; the process to tow and impound Mr. Richardson's car had already begun because the car was parked illegally and there was no way to move it without the keys. The inevitable discovery of the firearm would make it admissible even if it had been illegally seized. *See United States v. Swan*, 259 F. App'x 656, 661 (5th Cir. 2007)

(weapons and drugs from a possibly illegal search would have been inevitably discovered during an inventory search of the car).

### 3. Mr. Richardson's statements prior to being *Mirandized*

A person subjected to custodial interrogation by authorities must be apprised of their constitutional rights. *See generally Miranda v. Arizona*, 384 U.S. 436 (1966). Failure to apprise a person of their *Miranda* rights prior to custodial interrogation renders any statements made inadmissible, absent a waiver. *Id.* at 492. The government has agreed it will not present any statement made by Mr. Richardson before he was *Mirandized* during its case-in-chief. Resp. at 4. However, Mr. Richardson states he intends to introduce evidence of his un-*Mirandized* statements at trial and that this intention requires a ruling upon the admissibility of those statements. Mot. at ¶ 56.

The purpose of the exclusionary rule, of which Mr. Richardson is presumably seeking to invoke, is to deter illegal government conduct by removing the benefits of that conduct—use of the illegally-obtained evidence during the trial of the accused. *Elkins v. United States*, 364 U.S. 206, 217 (1960). The fact that the government has averred it will not introduce Mr. Richardson's statements during its case-in-chief renders ruling upon Mr. Richardson's statements moot; there is no benefit of which to deprive the government. In addition, commentators have opined that a defendant remains in control at all times of the use of illegally-obtained evidence: he may prevent the government from presenting the evidence by invoking the exclusionary rule or waive the

benefits of the rule and introduce the evidence himself. James L. Kainen, *The Impeachment Exception to the Exclusionary Rules: Policies, Principles, and Politics*, 44 Stan. L. Rev. 1301, 1370 (1992). In sum, either the government will not attempt to introduce Mr. Richardson's statements and no exclusion will be required or Mr. Richardson will introduce his own statements and thereby waive his privilege against the use of such evidence. Regardless, a ruling is not required by this Court. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 453 (1985)("judicial restraint requir[es] us to avoid unnecessary resolution of constitutional issues").

## IV. Conclusion

Mr. Richardson has failed to present adequate grounds to justify reconsideration of his original motion to suppress. The "new" evidence advanced does not influence the Court's decision and Mr. Richardson has presented no additional legal arguments. Finally, the Court declines to rule upon any Fifth Amendment warning issues arising from Mr. Richardson's statements before he was *Mirandized*. Therefore, Mr. Richardson's amended motion to suppress, in its entirety, is **DENIED**.

**SO ORDERED.**

Signed March 1st, 2011.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE